Consuelo Osuna de GALLARDO, Petitioner,

v.

IMMIGRATION AND NATURALIZATION SERVICE, Respondent.

No. 79–7289.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 1980.

Decided July 24, 1980.

Victor B. Moheno, Oxnard, Cal., for petitioner.

Carolyn M. Reynolds, Los Angeles, Cal., for respondent.

Before PREGERSON and NELSON, Circuit Judges, and WILKINS,* District Judge.

PREGERSON, Circuit Judge.

Petitioner Consuelo Osuna de Gallardo overstayed her student visa and was subject to deportation. Her application under 8 U.S.C. § 1254(a) for suspension of deportation was denied by the immigration judge, and the Board of Immigration Appeals affirmed that decision. The immigration judge determined that Mrs. Gallardo's three and a half month vacation in Honduras and Mexico interrupted the seven year period of continuous physical presence in the United States required for suspension of deportation, thereby disqualifying her for that discretionary relief. We conclude that the immigration judge and the Board failed to apply the correct standard for determining whether a departure from the United States is "meaningfully interruptive" of an alien's presence in this country for purposes of precluding suspension of deportation. Therefore, we reverse.

■ To be eligible for discretionary suspension of deportation an alien must establish: (1) continuous physical presence in the United States for at least seven years immediately preceding the date of the application for suspension of deportation; (2) good moral character; and (3) extreme hardship to the alien or the alien's parent, spouse, or child, who is a citizen or lawful permanent resident of the United States. 8 U.S.C. § 1254(a)(1). The immigration judge found that Mrs. Gallardo had established good moral character. The issue of extreme hardship was never reached. Mrs. Gallardo, however, employed, married, and the mother of an American citizen. In 1978, Mrs. Gallardo was denied suspension of deportation because the immigration judge determined, and the Board agreed, that her 1973 vacation of three and a half months in Honduras and Mexico interrupted the continuity of her fifteen year physical presence in the United States.

In proceedings under § 1254(a)(1) to suspend deportation, the standard for determining when an alien's departure from the United States is "meaningfully interruptive" so as to break the requirement of seven years continuous physical presence was recently stated in *Kamheangpatiyooth v. INS*, 597 F.2d 1253, 1257 (9th Cir. 1979):

An absence cannot be significant or meaningfully interruptive of the whole period [of continuous physical presence] if indications are that the hardship of deportation to the alien would be equally severe had the absence not occurred, and that no significant increase in the likelihood of deportation could reasonably have been expected to flow from the manner and circumstances surrounding the absence.

We reaffirmed this standard in *Chan v. INS*, 610 F.2d 651, 654–55 (9th Cir. 1979), when we observed that:

The distinction between defining a "break in the continuity of physical presence" under 8 U.S.C. § 1254 and defining an "entry" under § 101(a)(13) of the Immigration and Nationality Act [8 U.S.C. § 1101(a)(13)] is not significant, so a similar test applies. *Wadman v. INS*, [9 Cir.] 329 F.2d [812] at 815. In defining "entry" under § 101(a)(13), the Supreme Court held that there must be an intent to depart in a manner regarded as meaningfully interruptive of an alien's perma-

*The Honorable Philip C. Wilkins, Chief United States District Judge for the Eastern District of California, sitting by designation.

nent residence. *Rosenberg v. Fleuti*, 374 U.S. 449, 462, 83 S.Ct. 1804 [10 L.Ed.2d 1000 (1963)]. The relevant factors [among others identified in *Fleuti*] for the court to consider are: (1) the length of the absence; (2) the purpose of the visit; and (3) the necessity of travel documents.

610 F.2d at 654.

These three factors, though by no means determinative, are helpful guides in applying the *Kamheangpatiyooth* standard to determine whether an alien's absence from this country is meaningfully interruptive of the requirement of seven years continuous physical presence. These factors, among others, are relevant to the central inquiry, that is, how the absence bears on the question of "the hardship and unexpectedness of [exposure to] expulsion" that the alien seeking suspension of deportation under § 1254(a)(1) might suffer. *Kamheangpatiyooth*, 597 F.2d at 1257.

When applying the *Kamheangpatiyooth* standard it is well to bear in mind what we said there about the Congressional purpose underlying the continuity requirement:

It was Congress's judgment [that seven years continuous presence in this country by the alien] was likely to give rise to a sufficient commitment to this society through establishment of roots and development of plans and expectations for the future to justify an examination by the Attorney General of the circumstances of the particular case to determine whether deportation would be unduly harsh. . . . An alien who leaves the country briefly and for innocent reasons during the requisite seven years may be in no different position, realistically viewed, than an alien who has remained within the borders for an identical period.

597 F.2d at 1256–57.

In considering Mrs. Gallardo's application for a stay of deportation in 1978, neither the immigration judge nor the Board applied the correct standard. Of course, at that time, neither had the guidance of this court's 1979 decisions in the *Kamheangpatiyooth* and *Chan* cases. We

therefore vacate the Board's order and remand these proceedings to the Immigration and Naturalization Service (INS) for a de novo determination of Mrs. Gallardo's eligibility for suspension of deportation in light of our recent decisions in *Kamheangpatiyooth* and *Chan*.

The record before us shows that except for her three and a half month vacation during 1973 in Honduras and Mexico, Mrs. Gallardo has lived in the United States continuously since she first entered in 1963 at age seventeen. On returning to the United States from her vacation, she obtained a permit to reenter this land on the pretext that she intended to stay only a few days. This circumstance should not, by itself, break the continuity of her presence for purposes of eligibility under § 1254(a)(1). This court has recognized that not every violation of law taints an otherwise innocent trip abroad. *Git Foo Wong v. INS*, 358 F.2d 151 (9th Cir. 1966) (illegal entry in 1951 and second illegal entry in 1961 on pretext of American citizenship after a two hour sightseeing trip to Mexico not relevant in determining whether trip to Mexico broke continuity of physical presence for purposes of suspension of deportation). The suspension of deportation provisions were designed by Congress to give the Attorney General discretion with respect to illegal as well as legal aliens. *Git Foo Wong v. INS*, 358 F.2d at 153–54. Moreover, this court has cautioned that the suspension of deportation provisions are remedial and are to be generously construed to relieve aliens of harsh consequences, of unexpected risks, and of unintended consequences flowing from a rigid application of the provisions of § 1254(a)(1). *Kamheangpatiyooth v. INS*, 597 F.2d at 1256.

Mrs. Gallardo also raises the issue of equitable estoppel. She says that she failed to apply for suspension of deportation before her 1973 vacation, when her actual continuous physical presence in the United States exceeded seven years, because she relied on the representation of an INS officer that a hearing to determine her eligibility for suspension would be scheduled without further

88

action on her part. While we do not reach the estoppel issue, we note that the administrative record on that subject was developed inadequately. On remand, should the INS determine that Mrs. Gallardo's vacation broke the continuity of her stay in the United States under the *Kamheangpatiyooth* standard, then the INS should develop the record, make the necessary findings, and resolve the estoppel issue. *See INS v. Hibi,* 414 U.S. 5, 94 S.Ct. 19, 38 L.Ed.2d 7 (1973); *United States v. Ruby Co.,* 588 F.2d 697 (9th Cir. 1978), *cert. denied,* 442 U.S. 917, 99 S.Ct. 2838, 61 L.Ed.2d 284 (1979); *Yang v. INS,* 574 F.2d 171 (3rd Cir. 1978); *Sun Il Yoo v. INS,* 534 F.2d 1325 (9th Cir. 1976); *Santiago v. INS,* 526 F.2d 488 (9th Cir. 1975), *cert. denied,* 425 U.S. 971, 96 S.Ct. 2167, 48 L.Ed.2d 794 (1976).

This panel will retain jurisdiction of this case should further proceedings before this court be required.

The Board's order is vacated and the case remanded for further proceedings.