NOT FOR PUBLICATION

UNITED STATES COURT OF APPEALS

FOR THE NINTH CIRCUIT

FILED

JUL 15 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

MARIO ALEXANDER IXCHOP-PEREZ,

Petitioner,

v.

WILLIAM P. BARR, Attorney General,

Respondent.

No. 19-71144

Agency No. A206-150-579

MEMORANDUM*

On Petition for Review of an Order of the
Board of Immigration Appeals

Argued and Submitted June 10, 2020
San Francisco, California

Before: M. SMITH and HURWITZ, Circuit Judges, and EZRA,** District Judge.

Immigration and Customs Enforcement ("ICE") officers arrested Mario Ixchop-Perez without a warrant outside a San Francisco hospital after unsuccessfully searching for him at his home. Ixchop moved to suppress evidence obtained from the arrest and to terminate removal proceedings, asserting both constitutional and

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable David A. Ezra, United States District Judge for the District of Hawaii, sitting by designation.

regulatory violations. An immigration judge ("IJ") denied the motion without an evidentiary hearing; the IJ later denied Ixchop's applications for asylum and withholding of removal. The Board of Immigration Appeals ("BIA") dismissed Ixchop's appeal. Ixchop petitioned for review.[1] We have jurisdiction under 8 U.S.C. § 1252(a)(1).[2] We grant the petition in part and deny it in part.

1. The Fourth Amendment exclusionary rule applies in removal proceedings only "(1) 'when the agency violates a regulation promulgated for the benefit of petitioners and that violation prejudices the petitioner's protected interests' and (2) 'when the agency egregiously violates a petitioner's Fourth Amendment rights.'" *Perez Cruz v. Barr*, 926 F.3d 1128, 1137 (9th Cir. 2019) (quoting *Sanchez v. Sessions*, 904 F.3d 643, 649 (9th Cir. 2019)). A violation is egregious if evidence is obtained by deliberate violations of the Fourth Amendment or by conduct a reasonable officer should know violates the Constitution. *Lopez-Rodriguez v. Mukasey*, 536 F.3d 1012, 1018 (9th Cir. 2008).

2. The ICE officers did not egregiously violate the Fourth Amendment by

---

[1] Ixchop also sought cancellation of removal and protection under the Convention Against Torture before the agency, but does not challenge the denial of that relief in his petition for review.

[2] Although Ixchop did not specifically appeal the IJ's denial of reconsideration of the suppression motion to the BIA, the BIA addressed all suppression-related issues on appeal. We may therefore address that denial here. *See Parada v. Sessions*, 902 F.3d 901, 914 (9th Cir. 2018) ("It is well-established that we may review any issue addressed on the merits by the BIA . . . .").

entering the curtilage of Ixchop's home without a warrant with the intent to arrest him. At the time of the entry, no binding authority held that an officer's subjective intent was relevant in evaluating the constitutionality of an entry into the curtilage. *See United States v. Perea-Rey*, 680 F.3d 1179, 1187 (9th Cir. 2012). The entry was reasonable under then-extant caselaw because it was "consistent with an attempt to initiate consensual contact with the occupants of the home." *Id.* at 1188.

3. The ICE officers also did not egregiously violate the Fourth Amendment in securing consent from Ixchop's sister to enter the home by identifying themselves as the "police" looking for Ixchop. Even assuming that ICE officers are not the "police," we are not persuaded that this representation alone misinformed Ixchop's sister "as to the purpose for which the agent[s] s[ought] entry." *United States v. Bosse*, 898 F.2d 113, 115 (9th Cir. 1990) (per curiam). Ixchop fails to explain how the officers' statement that they were looking for him was inconsistent with their intent to arrest him if he were located. Because we conclude that the ICE officers did not impermissibly obtain consent, they also did not violate 8 C.F.R. § 287.8(f)(2), which generally prohibits warrantless entry into a residence without consent.

4. Although the ICE officers obtained consent only to look for Ixchop, they remained after not finding him and asked his sister where he was, falsely claiming they needed him to sign probation paperwork. Even assuming that the ICE

3

officers exceeded the scope of consent by remaining in the house, any constitutional violation was not egregious. Ixchop identifies no binding authority stating that such questioning after the conclusion of a consent search violates the Fourth Amendment. *See Martinez-Medina v. Holder*, 673 F.3d 1029, 1035 (9th Cir. 2011) (finding no egregious constitutional violation because of a "lack of clarity in the law"). Our cases invalidating consent searches based on misrepresentations focus only on initial entry into a residence. *See Whalen v. McMullen*, 907 F.3d 1139, 1147 (9th Cir. 2018) (collecting cases).

5. Ixchop has made a prima facie case that the ICE officers committed a regulatory violation by not securing an arrest warrant prior to arresting him. *See* 8 C.F.R. § 287.8(c)(2). Immigration officers may make a warrantless arrest only if they have reason to believe that a person not lawfully in the country is "likely to escape before a warrant can be obtained." *Id*. § 287.8(c)(2)(ii). Nothing in the record establishes that Ixchop, who had lived in San Francisco for many years before the arrest and whose wife was giving birth in the hospital outside which he was arrested, was a flight risk. Nor does the record suggest that the arresting officers even considered whether Ixchop was a flight risk or whether a warrant was required. The IJ's reliance on Ixchop's immigration status is insufficient because the regulation requires not only that the arrestee be in the country without authorization, but also a separate determination of flight risk. *See* 8 C.F.R. § 287.8(c)(2)(i)–(ii).

And, nothing in Ixchop's criminal history indicated he was a flight risk. Indeed, the officers knew Ixchop's address before setting out to arrest him.

This regulation was promulgated for the benefit of petitioners like Ixchop. *See Sanchez*, 904 F.3d at 651. It "establish[es] enforcement standards" for the "conduct of arrests" and "assure[s] the continuance of disciplined and professional conduct by [] enforcement personnel." 57 Fed. Reg. 47011, 47011 (Oct. 14, 1992). But the Fourth Amendment does not require a determination of exigency before a warrantless public arrest, *see United States v. Driver*, 776 F.2d 807, 809 (9th Cir. 1985), so we cannot presume prejudice from this regulatory violation, *see Sanchez*, 904 F.3d at 652. Because the IJ and the BIA did not address the issue of prejudice, we grant the petition in part and remand for the agency to address that issue in the first instance. *See Andia v. Ashcroft*, 359 F.3d 1181, 1184 (9th Cir. 2004) (per curiam) ("If we conclude that the BIA's decision cannot be sustained upon its reasoning, we must remand to allow the agency to decide any issues remaining in the case.").

6. The warrantless arrest was also permissible only if the ICE officers had reason to believe that Ixchop was unlawfully present in the United States, 8 C.F.R. § 287.8(c)(2)(i), which is equivalent to the constitutional requirement of probable cause, *see Tejeda-Mata v. INS*, 626 F.2d 721, 725 (9th Cir. 1980). On this record, we cannot discern what information the officers had about Ixchop's immigration

status before the arrest. We therefore grant the petition in part and remand for a more fulsome development of the record on this issue. *See de Gallardo v. INS*, 624 F.2d 85, 88 (9th Cir. 1980).

7. Even assuming that the ICE officers violated 8 C.F.R. § 287.3(c) by failing to advise Ixchop of the reason for his arrest, his right to legal representation, and the consequences of any statements, compliance with this regulation is not constitutionally mandated at the time of arrest. *See Tejeda-Mata*, 626 F.2d at 724 n.3. Thus, prejudice may not be presumed. *See Sanchez*, 904 F.3d at 652. The BIA did not err in determining that Ixchop failed to show that he was prejudiced by this regulatory violation.[3]

8. An ICE directive prohibits arrests at sensitive locations, such as hospitals, absent exigent circumstances. Agencies may be required to abide by certain internal policies, including those not reflected in formal regulations. *Alcaraz v. INS*, 384 F.3d 1150, 1162 (9th Cir. 2004) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260 (1954)). Although the ICE directive disclaims the provision of any rights or benefits, the *Accardi* doctrine can extend to practices for which the agency disclaims binding effect. *See id.* (collecting cases). Because the

---

[3] The BIA may have erred in finding a violation of this regulation, *see Samayoa-Martinez v. Holder*, 558 F.3d 897, 901–02 (9th Cir. 2009), but "we cannot deny a petition for review on a ground upon which the BIA itself did not base its decision," *Dai v. Sessions*, 884 F.3d 858, 866 (9th Cir. 2018) (cleaned up).

IJ and BIA did not address whether the *Accardi* doctrine, properly understood, governs the directive, we grant the petition in part. We remand for "further factual development regarding the nature and extent of agency statements regarding" arrests at sensitive locations and a determination of whether there was a policy that bound the agency. *Id.* at 1162–63.

**PETITION FOR REVIEW GRANTED IN PART, DENIED IN PART.**[4]

---

[4] Because we remand for further proceedings, we decline to address the denial of the application for withholding and removal.